## FLOUNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **In re: Motion to Compel Compliance with Subpoena Directed to Non-Party David Reaboi** | Misc. Action No.: _____ |
| BROIDY CAPITAL MANAGEMENT, LLC and ELLIOTT BROIDY<br>Plaintiffs, | Underlying Litigation:<br><br>United States District Court for the District of Columbia<br>Civil Action No.: 19-cv-00150-DLF |
| v. | |
| NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC<br>Defendants. | |

## MOTION TO COMPEL SUBPOENA RESPONSES AND MEMORANDUM IN SUPPORT

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 4

LEGAL STANDARD.................................................................................................... 5

ARGUMENT .............................................................................................................. 6

    I.      RESPONDENT WAIVED ALL OBJECTIONS TO STONINGTON'S SUBPOENA. ......................... 6

    II.    RESPONDENT IS IN VIOLATION OF HIS OBLIGATION TO RESPOND TO THE SUBPOENA....... 7

    III.   RESPONDENT'S FAILURE TO RESPOND TO THE SUBPOENA HARMS STONINGTON............. 8

CONCLUSION............................................................................................................ 12

CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)................................... 12

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i) and Local Rule 26.1, Movants Nicolas D. Muzin and Stonington Strategies, LLC (collectively, "Stonington" or "Movants"), respectfully request that this Court compel David Reaboi ("Reaboi" or "Respondent") to comply with a subpoena for documents issued to him by Stonington.

## INTRODUCTION

Movants are named defendants in an action pending in the U.S. District Court for the District of Columbia.  *See* First Am. Compl. ("FAC"), *Broidy Capital Management, LLC et al. v. Nicolas D. Muzin et al.*, No. 1:19-cv-00150 (D.D.C. Apr. 2, 2019) (the "Underlying Action"), ECF No. 18-2.  A copy of the underlying complaint is attached as Exhibit 1.  The Underlying Action represents the fifth attempt by Elliott Broidy (with Broidy Capital Management, Plaintiffs in the Underlying Action, "Broidy") to pursue claims against those he alleges were involved in a widespread conspiracy, supposedly orchestrated by the State of Qatar ("Qatar"), to hack his computer and disseminate his emails to journalists.[1]  Broidy's FAC alleges that the resulting media coverage of his leaked emails falsely disparaged his character, exposed his alleged trade secrets, and ultimately damaged both his public standing and his business relationships.  Broidy claims that he was targeted because of his outspoken, and supposedly civic-minded, opposition to Qatar.

---

[1] Two other suits that Broidy has filed to date have been dismissed.  *See* Order, *Broidy Cap. Mgmt., LLC v. Benomar*, No. 18-CV-06615 (S.D.N.Y. Dec. 21, 2018), ECF No. 56; *Broidy Cap. Mgmt., LLC v. Qatar*, No. 18-CV-2421, 2018 WL 6074570, at *11 (C.D. Cal. Aug. 8, 2018), *aff'd*, 982 F.3d 582 (9th Cir. 2020); *Broidy Cap. Mgmt., LLC v. Qatar*, No. 18-CV-2421, 2018 WL 9943551, at *9 (C.D. Cal. Aug. 22, 2018); *Broidy Cap. Mgmt., LLC v. Qatar*, No. 18-CV-2421, 2018 WL 9943552, at *11 (C.D. Cal. Aug. 16, 2018).  The court in a third suit also granted a motion to dismiss, *Broidy v. Glob. Risk Advisors LLC*, No. 1:19-CV-11861, 2021 WL 1225949, at *10 (S.D.N.Y. Mar. 31, 2021), but recently allowed amendment based on an entirely new legal theory, *id.* at Order (S.D.N.Y. Feb. 28, 2022), ECF No. 114.  Broidy's counterclaims filed in a fourth suit were also recently dismissed.  *See* Order, *Mosafer Inc. v. Broidy*, No. 21-CV-06320 (C.D. Cal. Feb. 4, 2022), ECF No. 134.

According to the FAC, the alleged hacking operation occurred from December 2017 through early 2018. The relevant events of this lawsuit, however, began well before then, in at least 2016 and early 2017, when many of the leaked emails were sent and the illegal activity discussed in them occurred.

Broidy's leaked emails—and the many articles written about them—provide a window into a vast operation of undisclosed foreign lobbying, corruption, and other illegal activity. In pertinent part, Broidy supported a large-scale public relations effort targeting Qatar and those working to improve the relationship between the governments of the United States and Qatar, on behalf of countries like the United Arab Emirates ("UAE") and Saudi Arabia. In doing so, Broidy relied on members of the media and think tank scholars to spread the anti-Qatar message.[2]

Respondent is the president of Strategic Improvisation, a communications company that specializes in developing media strategy. Although not a journalist, Respondent is a writer and ghostwriter who, during the timeframe relevant to this lawsuit, criticized Qatar and has sought to undermine those lobbying on its behalf,[3] including Stonington.[4] Respondent is also a fellow with

---

[2] *See, e.g.*, Eileen Sullivan, *4 Takeaways From a Close Look at Elliott Broidy*, N.Y. Times (Aug. 13, 2019), https://www.nytimes.com/2019/08/13/us/politics/elliott-broidy-donald-trump.html; Desmond Butler and Tom LoBianco, *The princes, the president and the fortune seekers*, AP News (May 21, 2018), https://apnews.com/article/north-america-donald-trump-ap-top-news-qatar-international-news-a3521859cf8d4c199cb9a8567abd2b71.

[3] *See, e.g.*, David Reaboi, *BLOOD MONEY: How Qatar Bought Off the Entire DC Establishment*, Sec. Studs. Grp. (Mar. 26, 2019), https://securitystudies.org/blood-money-how-qatar-bought-off-the-entire-dc-establishment/.

[4] *See, e.g.*, David Reaboi, *Why the Media is at War with Saudi Arabia*, The Federalist (Apr. 10, 2019), https://thefederalist.com/2019/04/10/media-war-saudi-arabia/; David Reaboi, *Qatar Hacking Scandal Illustrates How U.S. Media Megaphones Foreign Agitprop*, The Federalist (Jan. 31, 2019), https://thefederalist.com/2019/01/31/qatar-hacking-scandal-illustrates-u-s-media-megaphones-foreign-agitprop/.

2

the D.C.-based Center for Security Policy that has regularly published articles critical of Qatar.[5] Stonington has reason to believe that Broidy retained Respondent as part of his unlawful efforts to advance the interests of Qatar's political rivals (including the UAE and Saudi Arabia).

Pursuant to Federal Rule of Civil Procedure 45, Stonington served Respondent with a subpoena for documents seeking information about Broidy's relationship with foreign principals hostile to Qatar, the work he orchestrated on their behalf through Respondent—including work related to the alleged hacking—and Broidy's unlawful efforts to shape U.S. policy through contact with the media, think tanks, public relations firms, and/or government officials.  Information resulting from these requests will support defenses against Broidy's claims, undermine Broidy's factual allegations and credibility, and challenge his asserted entitlement to damages, including his alleged loss of business relationships and opportunities that he allegedly suffered as a result of Defendants'[6] conduct.  That is to say, all of the requests are permissible and seek relevant information.  *See* Fed. R. Civ. P. 26(b).

Respondent has failed to provide any response to Stonington's requests.  Despite being personally served with the subpoena nearly two months ago, Respondent has not provided a single objection.  Indeed, Respondent has not provided any response to the subpoena.  As a result, Respondent is in violation of the subpoena and has waived any objections to the subpoena.  This Court should grant Stonington's Motion to Compel in full.

---

[5] *See, e.g.*, Ctr. for Sec. Pol., *Center Catalogues Allegations of Qatar's Terrorism Support* (Sept. 26, 2017), https://centerforsecuritypolicy.org/center-catalogues-allegations-of-qatars-terrorism-support/.

[6] Stonington, Gregory Howard, and Joseph Allaham (together, "Defendants").

3

## BACKGROUND

On January 14, 2022, Stonington issued a subpoena directed to Respondent, with a compliance deadline of February 13, 2022.  Ex. 2, Reaboi Subpoena.  On January 22, Reaboi was personally served with the subpoena at his residence.[7]  Ex. 3, Reaboi Affidavit of Service.

Under the Federal Rules, written objections to the subpoena were therefore due by at least February 7, 2022.  *See* Fed. R. Civ. P. 45(d)(2)(B) (stating objections are due the earlier of the compliance deadline or 14 days after subpoena service); Fed. R. Civ. P. 26(a)(1)(C) (stating that if the last day falls on a weekend or holiday, "the period continues to run" until the next business day).  But Respondent failed to serve any objections to the subpoena by the February 7 objection deadline.  Respondent then proceeded to ignore the compliance deadline.[8]

To date, nearly six weeks after the objection deadline and a month after the subpoena's due date, Respondent has failed to contact Stonington regarding the subpoena or produce a single document.  He has thus entirely failed to comply with his obligations under Rule 45, and he has offered no good faith reason for his noncompliance.  This Court should compel Respondent to fully and immediately comply with the subpoena.

---

[7] Personal service on a subpoena respondent is more than sufficient to effect service under Rule 45.  *See, e.g.*, *Rainey v. Taylor*, No. 18-MC-24802, 2019 WL 1922000, at *2 (S.D. Fla. Apr. 30, 2019) (finding email service of a subpoena sufficient); *TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 616 (S.D. Fla. 2019) (noting that "Rule 45 does not require personal service" and allowing service by courier delivery).

[8] On February 14 (the day following the subpoena's due date), Broidy filed a motion for protective order in the Underlying Action, which seeks to limit the scope of Defendants' third-party subpoenas.  *See* ECF No. 118, Underlying Action (Feb. 14, 2022).  Broidy does not seek to quash Stonington's subpoena to Reaboi in the Underlying Action, and Movants are not aware of any motion to do so in this Court as the "place of compliance" required by Rule 45(c).  Accordingly, such motion should not affect the Court's ruling here, as Respondent has waived any objections to the subpoena and he has not made any good faith effort to respond to the subpoena.

4

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena on a non-party seeking the production of documents.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).[9]  "It is well established that the Federal Rules of Civil Procedure strongly favor full discovery whenever possible."  *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla. 2011).

In the context of discovery, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case."  *Companhia Energetica Potiguar v. Caterpillar Inc.*, 307 F.R.D. 620, 627 (S.D. Fla. 2015); *see Pietrangelo v. Refresh Club, Inc.*, No. 18-CV-1943, 2021 WL 2156504, at *5 (D.D.C. May 26, 2021) ("When it comes to discovery, [r]elevance is construed broadly."); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978).  "Therefore, with respect to a Rule 45 subpoena, a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party."  *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013); *see also Sakhil Ctr. at Doral Condo. Ass'n, Inc. v. Hanover Ins. Co.*, No. 18-CV-21659, 2019 WL 7881626, at *1 (S.D. Fla. Mar. 21, 2019) ("[A] party may use a Rule 45 subpoena to obtain 'discovery regarding any non-privilege matter that is relevant to any party's claim or defense.'").  Discovery "is not limited to the issues raised by the pleadings because discovery itself is designed to help define and clarify the issues.  In short, information can be relevant and therefore discoverable, even if not admissible at trial, so long as

---

[9] Unless otherwise noted, all emphasis in the brief has been added, and all internal citations, quotations, and alterations have been omitted.

the information is reasonably calculated to lead to the discovery of admissible evidence." *Adelman*, 276 F.R.D. at 689; *Cherokee Nation v. U.S. Dep't of the Interior*, 531 F. Supp. 3d 87, 98 (D.D.C. 2021) ("Ultimately, discovery generally should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.").

## ARGUMENT

Stonington's subpoena seeks non-privileged documents from Respondent that are directly probative of specific allegations in the FAC, elements of Broidy's claims and alleged damages, Broidy's credibility and motives for bringing this case, and Stonington's defenses.  Rather than serving timely written objections or even bothering to comply with the subpoena as contemplated by the Federal Rules of Civil Procedure, Respondent has ducked his obligations entirely.

This Court should thus order Respondent to promptly produce all responsive documents. Respondent has waived any potential objections.  Respondent has further violated his duty to comply with the subpoena by failing to respond.  And his failure to respond harms Stonington's ability to test Broidy's allegations and prepare its defenses.

## I.     RESPONDENT WAIVED ALL OBJECTIONS TO STONINGTON'S SUBPOENA.

Under Rule 45, a non-party may object to a subpoena.  Objections, however, "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P. 45(d)(2)(B).  "A non-party waives any objections if []he does not timely object to the subpoena."  *Sakhil Ctr.*, 2019 WL 7881626, at *1; *Selinger v. Kimera Labs, Inc.*, No. 20-CV-24267, 2021 WL 6284604, at *1 (S.D. Fla. Dec. 6, 2021) (same); *Whatley v. World Fuel Servs. Corp.*, No. 20-MC-20993, 2020 WL 2616209, at *3 (S.D. Fla. May 22, 2020) ("The failure to serve written objections to a subpoena within the time specified by Rule 45(d)(2)(B) typically constitutes a waiver of such objections, as does failing to file a timely motion to quash."); *Carroll v. TheStreet.com, Inc.*, No. 11-CV-81173, 2013 WL 12383301, at *1 (S.D. Fla. Apr. 15, 2013)

("[F]ailure to serve written objections to a subpoena generally waives any objections the person subject to a subpoena may have."); *Madeline LLC v. Street*, No. 09-MC-80705, 2009 WL 1563526, at *1 (S.D. Fla. June 3, 2009) ("Failure to timely raise objections results in waiver."); *see also Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998) ("[T]he failure to serve written objections to a subpoena within the time frame specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections.").[10]

Here, Respondent has failed to serve any objections at all. The time specified for Respondent's compliance with Stonington's subpoena was February 13, 2022, and the first business day following fourteen days from service was February 7, 2022. *See* Rules 45(d)(2)(B), 6(a)(1)(C); Ex. 2, Reaboi Subpoena. Objections were thus due on February 7, at the latest, and Respondent failed to serve objections by that date. More than a month later, Respondent still has not attempted to object or otherwise even acknowledge the need to comply with a subpoena seeking relevant information. Thus, Respondent has waived any objection to the subpoena, and for that reason alone, the Court should compel Respondent to comply with the subpoena in full.

## II.   RESPONDENT IS IN VIOLATION OF HIS OBLIGATION TO RESPOND TO THE SUBPOENA.

A subpoena is a type of court order. As the Advisory Committee's commentary makes clear, Rule 45 allows "attorneys in distant districts to serve as officers authorized to issue commands in the name of the court," and "defiance of a subpoena is . . . an act in defiance of a court order." Fed. R. Civ. P. 45 advisory committee's notes to 1991 amendment. Accordingly, "[n]onparties receiving a lawful subpoena have a duty to provide" responsive materials. *Selinger*,

---

[10] Citations in pre-2013 cases to Rule 45(c)(2)(B) refer, in substance, to the same 14-day provision now housed under Rule 45(d)(2)(B). Amendments to the Rule in 2013 caused "[s]ubdivision (d) [to] contain[] the provisions formerly in subdivision (c)." Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment.

2021 WL 6284604, at *1; *see Klay v. All Defendants*, 425 F.3d 977, 986 (11th Cir. 2005) ("[T]he

duty to provide evidence has long been considered to be almost absolute.").

Violation of a subpoena thus "exposes the defiant witness to contempt sanctions." Fed. R.

Civ. P. 45 advisory committee's notes to 1991 amendment 45(g); *see* Fed. R. Civ. P. 45(g);

*Selinger*, 2021 WL 6284604, at *1. Indeed, civil contempt is "undoubtedly" the "usual sanction

for failing to respond properly to a duly issued subpoena," *Madeline*, 2009 WL 1563526, at *2

(awarding fees to movant), and is only "avoidable through obedience." *Selinger*, 2021 WL

6284604, at *1.

Respondent has ignored his obligation to respond to the subpoena. The Court should thus

not only order full and immediate production of all requested materials, it should find Respondent

in contempt.

### III. RESPONDENT'S FAILURE TO RESPOND TO THE SUBPOENA HARMS STONINGTON.

Fact discovery in the Underlying Action is set to close in less than three months. *See*

Minute Order, Underlying Action (Dec. 8, 2021). By flouting Stonington's subpoena, Respondent

has deprived Stonington of reasonable and necessary discovery material and prejudiced its ability

to defend itself in the Underlying Action. Indeed, the subpoena seeks important information that

bears on Stonington's defenses.

*First*, the subpoena seeks information about Respondent's relationship with Broidy and his

associates and the work that Respondent was paid—or prompted—to do on behalf of Broidy and

his foreign principals, which is at the heart of this case.[11] Indeed, Respondent published multiple

---

[11] Ex. 2, Reaboi Subpoena Reqs. 1–6, 9–11, 13–14.

articles targeting Qatar—and Stonington's work for Qatar, in particular—during the relevant time period.[12]

*Second*, the subpoena seeks information regarding allegations stated in the FAC, including those implicating Respondent's efforts on behalf of Broidy.[13]  The FAC contains wide-ranging allegations relating to Broidy's theory that Defendants conspired to hack and leak his emails in order to punish him for his supposedly altruistic opposition to Qatar.  *See, e.g.*, Ex. 1, FAC ¶¶ 8, 12, 27 (alleging defendants in the Underlying Action "manufactur[ed] negative news stories" about Broidy, describing Broidy as a "civic leader and philanthropist," and claiming the coverage of his leaked emails harmed his "standing and business relationships in Washington, D.C.").  By asserting these allegations in the FAC, Broidy has necessarily put them at issue for purposes of discovery and Stonington may investigate these topics through third-party discovery.  *See Pietrangelo*, 2021 WL 1209300, at *9 & n.3 (explaining that even "one word" in a complaint can "open a can of discovery worms," and that a "seasoned litigator such as Plaintiff ought to know better than to include such superfluous language in a complaint if he is not prepared to litigate it"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-CV-05944, 2015 WL 12952688, at *3 (N.D. Cal. Jan. 16, 2015) (holding discovery that can "rebut allegations" is discoverable even if allegations are not central to plaintiff's claims).  As noted above, Stonington has reason to believe that Respondent is part of a campaign of writers, think tanks, and others organized by Broidy to influence U.S. policy against Qatar at the behest of Broidy's foreign principals, including the UAE

---

[12]  *See, e.g.*, David Reaboi, *Qatar's Doha Forum Features Terror Supporters, Congressional Democrats*, Sec. Studs. Grp. (Dec. 17, 2018), https://securitystudies.org/qatars-doha-forum-features-terror-supporters-congressional-democrats/;    David Reaboi, *Khashoggi: Qatari Asset in Life; Qatari Asset in Death*, Sec. Studs. Grp. (Dec. 23, 2018), https://securitystudies.org/jamal-khashoggi-and-qatar-in-the-echo-chamber/; Reaboi, *supra* n.4.

[13]  Ex. 2, Reaboi Subpoena Reqs. 3–6.

and Saudi Arabia, and to improve his own business opportunities with those countries. Respondent's materials, therefore, may show Broidy's role in orchestrating attacks on Qatar and efforts to influence U.S. policy regarding Qatar, as well as Broidy's true motives for doing so.

*Third*, the subpoena seeks information about the illegal activity that is evidenced in the supposedly hacked materials underlying Broidy's claims.[14]  Indeed, Stonington has reason to believe that Respondent's materials may shed light on Broidy's illegal efforts to influence U.S. policy regarding Qatar on behalf of foreign principals.

The FAC alleges that Defendants shared Broidy's leaked emails with journalists who published supposedly false and misleading articles about them, thus injuring Broidy's public standing and revealing his alleged trade secrets.  *See, e.g.*, Ex. 1, FAC ¶¶ 117, 119, 122–23, 126, 130, 141–42, 144, 148, 151–52, 158.  Those articles,[15] however, reveal that Broidy engaged in

---

[14] *Id.*, Reaboi Subpoena Reqs. 1–15.

[15] *See, e.g.*, Justin Glawe, *Elliott Broidy's Company Got Its Biggest U.S. Government Job Ever While He Pitched Trump Administration*, Daily Beast (May 24, 2018), https://www.thedailybeast.com/elliott-broidys-company-got-its-biggest-us-government-job-ever-while-he-pitched-trump-administration?ref=scroll; Bradley Hope et al., *Trump Ally Was in Talks to Earn Millions in Effort to End 1MDB Probe in U.S.*, Wall Street J. (Mar. 1, 2018), https://www.wsj.com/articles/trump-ally-was-in-talks-to-earn-millions-in-effort-to-end-1mdb-probe-in-u-s-1519919321; Suzanne Kianpour, *Emails show UAE-linked effort against Tillerson*, BBC News (Mar. 5, 2018), https://www.bbc.com/news/world-us-canada-43281519; David D. Kirkpatrick & Mark Mazzetti, *How 2 Gulf Monarchies Sought to Influence the White House*, N.Y. Times (Mar. 21, 2018), https://www.nytimes.com/2018/03/21/us/politics/george-nader-elliott-broidy-uae-saudi-arabia-white-house-influence.html; Desmond Butler et al., *Mueller probe witness secretly backed UAE agenda in Congress*, AP News (Mar. 26, 2018), https://apnews.com/article/north-america-donald-trump-ap-top-news-qatar-politics-b4946f7bf1fe4328b0c81506434aa082; Ryan Grim & Alex Emmons, *Trump Fundraiser Offered Russian Gas Company Plan to Get Sanctions Lifted for $26 Million*, The Intercept (Apr. 20, 2018), https://theintercept.com/2018/04/20/elliott-broidy-trump-russia-sanctions/; Adam Pasick, *A timeline of all the foreign payments to Donald Trump's moneymen, Elliott Broidy and Michael Cohen*, Quartz (May 25, 2018), https://qz.com/1287027/a-timeline-of-donald-trump-associates-elliott-broidy-and-michael-cohens-payments-from-foreign-countries/; Andy Kroll, *How Trump's Swamp Works Now*, Rolling Stone (Feb. 12, 2019), https://www.rollingstone.com/politics/politics-features/elliott-broidy-donald-trump-swamp-793159/; Butler & LoBianco, *supra* n.2.

covert efforts to influence high-ranking U.S. government officials—including the President of the United States, Secretary of State, Attorney General, and members of Congress—on behalf of foreign principals (UAE, Saudi Arabia, and others). Broidy never disclosed any of this activity or registered as a foreign agent, as required under the Foreign Agents Registration Act of 1938, 22 U.S.C. § 611 *et seq.* ("FARA"), and eventually pleaded guilty to conspiring to violate FARA (though he was subsequently pardoned by President Trump).[16] As described by the Department of Justice, Broidy was "secretly do[ing] the bidding of foreign principals" in "a covert campaign to influence the U.S. Government."[17] Further, as Broidy's plea agreement revealed, Broidy sought "to obtain business from a Middle Eastern country"—understood to be the UAE—"to influence U.S. policy towards a second Middle Eastern country and its alleged support of terrorist activities"—understood to be Qatar.[18]

As Defendants explained in their recent motion to compel Broidy to comply with discovery requests in the Underlying Action, information relating to Broidy's illegal conduct is highly relevant. Among other things, this information is relevant to refute Broidy's claim that publication of his allegedly hacked emails "create[d] a false and injurious image" of him and thereby caused him harm. Ex. 1, FAC ¶ 33. Further, the information is relevant to rebut Broidy's repeated allegation that he was targeted because of his altruistic opposition to Qatar, when in fact he was covertly working on behalf of foreign powers to influence U.S. policy and to improve his own

---

[16] Transcript of Arraignment and Change of Plea at 80, *United States v. Broidy*, No. 1:20-CR-210 (D.D.C. Oct. 23, 2020), ECF No. 13.

[17] U.S. Dep't of Justice, *Recent FARA Cases*, https://www.justice.gov/nsd-fara/recent-cases (last visited Mar. 15, 2022).

[18] Plea Agreement at 3, *United States v. Broidy*, No. 1:20-CR-210 (D.D.C. Oct. 20, 2020), ECF No. 8 at 3.

business opportunities with those foreign powers.  *See also* Defs.' Mot. Compel, Underlying

Action (Feb. 7, 2022), ECF No. 115.

Respondent's failure to respond prevents Stonington from fully exploring these important

areas of discovery.  Despite ample time to comply with Stonington's subpoena, Respondent has

chosen simply to ignore it.  The Court should grant this Motion.

## **CONCLUSION**

Stonington respectfully requests that the Court compel David Reaboi to respond in full to

the discovery requests identified above and listed in Exhibit 2, to find David Reaboi in contempt

for his failure to obey Stonington's subpoena, *see* Fed. R. Civ. P. 45(g), and to grant such other

relief as appropriate.

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)**

Counsel for Stonington hereby certifies that it has made reasonable efforts to confer with

Respondent.  However, counsel was unable to do so because Respondent failed to respond to the

subpoena, which was served via personal service.  The present Motion is similarly being served

via personal service to ensure acceptance.

Dated: March 16, 2022

/s/ Ralph Caccia
Ralph Caccia (Fla. Bar No. 0087224)
rcaccia@wiley.law
Stephen J. Obermeier (*pro hac vice* forthcoming)
sobermeier@wiley.law
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Facsimile: (202) 719-7049

*Attorneys for Defendants Stonington Strategies LLC and Nicolas D. Muzin*

## CERTIFICATE OF SERVICE

I certify that I have caused a true and correct copy of the foregoing Motion to Compel Subpoena Responses and Memorandum in Support, as well as all accompanying documents and exhibits, to be served on the following individuals by U.S. mail and personal service:

David Reaboi
210 174th Street, Apt. 1208
Sunny Isles, Beach, FL 33160-3344

I further certify that I have caused a true and correct copy of the foregoing to be served via electronic mail to the following parties to the Underlying Action:

Henry B. Brownstein
KASOWITZ BENSON TORRES LLP
1399 New York Ave. NW, Suite 201
Washington, DC 20005
hbrownstein@kasowitz.com

Andrew R. Kurland
Daniel R. Benson
Jacob I. Benson
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
akurland@kasowitz.com
dbenson@kasowitz.com
jbenson@kasowitz.com

*Counsel for Plaintiffs Broidy Capital
Management and Elliott Broidy*

Liesel J. Schopler
RIFKIN WEINER LIVINGSTON LLC
225 Duke Of Gloucester Street
Annapolis, MD 21401
lschopler@rwlls.com

Charles S. Fax
RIFKIN WEINER LIVINGSTON LLC
4800 Hampden Lane, Suite 820
Bethesda, MD 20814
cfax@rwlls.com

Jeffrey A. Udell
Adam P. Cohen
Jacob Gardener
WALDEN MACHT & HARAN LLP
250 Vesey Street, 27th Floor
New York, NY 10281
judell@wmhlaw.com
acohen@wmhlaw.com
jgardener@wmhlaw.com

*Counsel for Defendant Gregory Howard*

Randall Adam Brater
ARENT FOX LLP
1717 K Street NW
Washington, DC 20006
randall.brater@arentfox.com

Eric Roman
Mohammed T. Farooqui
Nicholas Collins
ARENT FOX LLP
1301 Avenue of the Americas, Floor 42
New York, NY 10019
eric.roman@arentfox.com
mohammed.farooqui@arentfox.com
nicholas.collins@arentfox.com

*Counsel for Defendant Joseph Allaham*

David M. Zionts
Alexander A. Berengaut
Megan O'Neill
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
dzionts@cov.com
aberengaut@cov.com
moneill@cov.com

*Counsel for Interested Non-Party State of Qatar*

Dated: March 16, 2022

/s/ Ralph Caccia
Ralph Caccia